IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN PALLIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  16 cv 1972 |
| | ) | |
| PARESH VIPANI, and YISHAI BRONER, | ) | JURY DEMANDED |
| ANNETTE HENEGHAN, BENJAMIN M KLEIN, | ) | |
| BATYA B KLEIN and KENNETH S KLEIN | ) | |
| AS TRUSTEES OF THE BEREKE TRUST | ) | |
| dated as of February 10, 2003 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Jonathan Pallin ("Plaintiff"), by his attorneys, Cooney Corso & Moynihan, LLC, for his Complaint against Yishai Broner, Annette Heneghan, Benjamin M Klein, Batya B Klein And Kenneth S Klein (collectively, the "Trustees") as trustees of the Bereke Trust dated as of February 10, 2003 (the "Trust"), and Paresh Vipani, states as follows:

## NATURE OF THE ACTION

1. Plaintiff sold 100% of the stock of the Company to the Trustees and Vipani (collectively, "Buyer") pursuant to a Stock Purchase Agreement (the "SPA") dated as of January 20, 2015. Buyer has breached the obligations under the SPA, resulting in this lawsuit to enforce Plaintiff's rights under the SPA.

## PARTIES

2. Jonathan Pallin, Plaintiff, is an individual who resides in and is a citizen of Arizona. Prior to the SPA, he was the owner of 100% of the stock in the Company, and he transferred that stock pursuant to the terms of the SPA.

1

3. On information and belief, Paresh Vipani is a resident and citizen of the State of Illinois.

4. On information and belief, Yishai Broner is a resident and citizen of the State of Illinois. Broner conducts business in Cook County, Des Plaines, Illinois. He is the president and a director of the Company.

5. On information and belief, Annette Heneghan is a resident and citizen of the State of Illinois. Heneghan conducts business in Cook County, Des Plaines, Illinois. She is the secretary and Chief Operating Officer of the Company.

6. On information and belief, Benjamin Klein is a resident and citizen of the State of Illinois, residing at 7444 Long Avenue, Skokie IL. He is a director of the Company.

7. On information and belief, Batya B. Klein is a resident and citizen of the State of New Jersey.

8. On information and belief, Kenneth S. Klein is a resident and citizen of the State of New Jersey.

## JURSIDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

## FACTS

11. On or about January 20, 2015, Plaintiff and Buyer executed the SPA, a copy of which is attached hereto as Exhibit A.

12. Pursuant to the SPA terms, Plaintiff transferred 100% of the stock in the Company to Buyer.

13. Plaintiff has performed all his obligations under the SPA.

14. Buyer has paid $1,000,000 plus the aggregate of the amount indicated on the statement of net assets attached to the SPA as Schedule 2.2(a).

15. Additionally, Buyer agreed to pay Plaintiff 7.5% of the gross cash receipts of the Company for thirty-six months after the Earnout Commencement Date, up to a maximum of $1,000,000 earnout compensation.

16. The Earnout Commencement Date is defined as the seventh anniversary of the Closing Date.

17. The January 20, 2015 Effective Date was the Closing Date, as defined in the SPA.

18. The seventh month anniversary of the Closing Date was July 20, 2015.

19. July 31, 2015 was the first calendar month end after the Earnout Commencement Date.

20. By August 10, 2015, neither the Buyer nor the Company paid Plaintiff an earnout payment of 7.5% of the gross cash receipts of the Company for the period from July 21, 2015 through July 31, 2015.

21. By August 10, 2015, neither the Buyer nor the Company provided Plaintiff with a statement detailing the Company's revenues for the period from July 21, 2015 through July 31, 2015 or a certification of that statement by the Buyer.

22. Plaintiff requested payment and the certified statement numerous times before Buyer would make any response.

23. By September 10, 2015, neither the Buyer nor the Company paid Plaintiff an earnout payment of 7.5% of the gross cash receipts of the Company for the period from August 1, 2015 through August 31, 2015.

24. By September 10, 2015, neither the Buyer nor the Company provided Plaintiff with a statement detailing the Company's revenues for the period from August 1, 2015 through August 31, 2015 or a certification of that statement by the Buyer.

25. Plaintiff requested payment and the certified statement numerous times before Buyer would make any response.

26. By October 10, 2015, neither the Buyer nor the Company paid Plaintiff an earnout payment of 7.5% of the gross cash receipts of the Company for the period from September 1, 2015 through September 30, 2015.

27. By October 10, 2015, neither the Buyer nor the Company provided Plaintiff with a statement detailing the Company's revenues for the period from September 1, 2015 through September 30, 2015 or a certification of that statement by the Buyer.

28. Plaintiff requested payment and the certified statement numerous times before Buyer would make any response.

29. Plaintiff also requested Buyer produce financial information (the "Additional Financial Information") concerning the operations of the Company during the months of August through October 2015, including a detailed income statement of the Company, and all bank statements, invoices and receipts.

30. Neither the Buyer nor the Company produced the requested Additional Financial Information to Plaintiff.

31. On November 12, 2015, Plaintiff sent a demand for arbitration (the "Arbitration Demand") to Yishai Broner and to Aaron Rokach at the addresses identified in the SPA.

32. The arbitration demand included resolution of the unpaid earnout payments and the missing statements of the Company's revenues and Buyer's certifications.

33. The arbitration demand included the Company and Buyer's failure to produce the Additional Financial Information requested by Plaintiff.

34. Buyer has refused to participate in efforts to identify a mutually agreeable arbitrator.

35. On November 20, 2015, Buyer tendered a check in the amount of $8672.41, asserting that was the earnout payment owed to Plaintiff for the Company's receipts during August 2015.

36. The $8672.41 payment was not accompanied by a statement detailing the Company's revenues during August 2015.

37. The $8672.41 payment was not accompanied by Buyer's certification of the Company's revenues during August 2015.

38. Plaintiff requested the revenue statement and the Buyer's certification, but neither Buyer nor the Company provided that support for the $8672.41 payment.

39. On November 20, 2105, Buyer tendered a check in the amount of $10,466.42, asserting that was the earnout payment owed to Plaintiff for the Company's receipts during September 2015.

40. The $10,466.42 payment was not accompanied by a statement detailing the Company's revenues during September 2015.

41. The $10,466.42 payment was not accompanied by Buyer's certification of the Company's revenues during September 2015.

5

42. Plaintiff requested the revenue statement and the Buyer's certification, but neither Buyer nor the Company provided that support for the $10,466.42 payment.

43. Neither the Buyer nor the Company have made any additional earnout payments to Plaintiff.

44. Neither the Buyer nor the Company provided Plaintiff with a statement detailing the Company's revenues for the period from October 1, 2015 through the present or a certification of such statements by the Buyer.

## COUNT I
### Breach of Contract against Buyer

45. Plaintiff repeats and realleges Paragraphs 1 through 43 in this Count.

46. Plaintiff and Buyer entered into the SPA.

47. Plaintiff has performed all material terms of the SPA.

48. Buyer failed to make the monthly earnout payments beginning August 10, 2015 and continuing through the present.

49. Buyer failed to provide the statement of the Company's revenues beginning August 10, 2015 and continuing through the present.

50. Buyer failed to provide the Buyer's certification of the statement of the Company's revenues beginning August 10, 2015 and continuing through the present.

51. Buyer failed to produce the Additional Financial Information requested by Plaintiff.

52. On information and belief based on Buyer's statements, the alleged decrease in the Company's revenues, and the failure to provide any of the financial information about the Company, Buyer failed to solicit new clients and/or failed to service its existing clients substantially in accordance with its long-standing service expertise and practices.

53. On information and belief based on Buyer's statements, the alleged decrease in the Company's revenues, and the failure to provide any of the financial information about the Company, Buyer failed to continue to operate the Company as a separate and distinct division, with a separate set of financial records.

54. On information and belief based on Buyer's statements, the alleged decrease in the Company's revenues, and the failure to provide any of the financial information about the Company, Buyer failed to maintain records to allow for the calculation of the Company's gross receipts that are complete and accurate.

55. On information and belief based on Buyer's statements, the alleged decrease in the Company's revenues, and the failure to provide any of the financial information about the Company, Buyer took actions and/or omitted to take action in conjunction with the operation of the Company which has reduced the amount of the gross cash receipts and/or the ability of Seller to achieve the full $1,000,000 earnout payment.

56. The Company's revenues were $489,449 in 2011.

57. The Company's revenues were $1,049,421 in 2012.

58. The Company's revenues were $1,608,279 in 2013.

59. The Company's revenues were $2,481,077 in 2014.

60. Plaintiff demanded the payment of the earnout payments and production of the revenue statements and Buyer's certification, production of additional financial information supporting the Company's revenues, but Buyer has refused.

61. Plaintiff incurred and paid $15,000 to Kleinberg, Kaplan, Wolff & Cohen, P.C. related to his efforts to enforce his rights under the SPA.

62. Plaintiff has suffered in excess of $1,000,000 in damages from Buyer's refusal to perform its obligations under the SPA.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Buyer in an amount to be proven at trial, plus costs, attorney fees and interest, and such other and further relief as this Court shall deem just and equitable.

## COUNT II
### [In the alternative to Count I]
### Breach of Contract against Buyer

63. Plaintiff repeats and realleges Paragraphs 1 through 43 in this Count II.

64. Plaintiff and Buyer entered into the SPA.

65. Plaintiff has performed all material terms of the SPA.

66. Buyer failed to make the monthly earnout payments beginning August 10, 2015 and continuing through the present.

67. Buyer failed to provide the statement of the Company's revenues beginning August 10, 2015 and continuing through the present.

68. Buyer failed to provide the Buyer's certification of the statement of the Company's revenues beginning August 10, 2015 and continuing through the present.

69. Plaintiff provided the Arbitration Demand to Buyer.

70. Buyer failed to participate in the effort to mutually agree upon an arbitrator.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Buyer and appoint an arbitrator, plus costs, attorney fees and such other and further relief as this Court shall deem just and equitable.

DATED:  February 5, 2016 							JONATHAN PALLIN


											By:_____*John Moynihan*_____
												One of his Attorneys

John W. Moynihan
Cooney Corso and Moynihan LLC
1311 Butterfield, Suite 308
Downers Grove, IL  60515
jmoynihan@ccvmlaw.com
847-477-3919
630-390-2390 facsimile;
Attorney No. 46977